DOUGLAS M. DURBANO (#4209)
JOHN E. KEITER (#16487)
**DURBANO LAW FIRM, P.C.**
476 West Heritage Park Blvd., Ste. 105
Layton, Utah 84041
Telephone: (801) 776-4111
Facsimile:   (801) 776-1121
office@durbanolawfirm.com
john@durbanolawfirm.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CHICORA LIFE CENTER, LC**, a Utah limited liability company; and **CANYON HOLDINGS, L.C.** fka **CHICORA GARDEN HOLDINGS, LLC**, a Utah limited liability company;<br><br>　　Plaintiffs,<br><br>vs.<br><br>**K&L GATES LLP**, a Delaware limited liability partnership; **McCARTHY, REYNOLDS, & PENN, LLC** fka **McCARTHY LAW FIRM, LLC**, a South Caroline limited liability company; and DOES 1-10;<br><br>　　Defendants. | **AMENDED COMPLAINT**<br><br>Case No.:  1:20-cv-00112-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Chicora Life Center, LC ("**Chicora Life**") and Canyon Holding, L.C. fka Chicora Garden Holdings, LLC ("**Chicora Holdings**") complains and alleges against defendants K&L Gates LLP ("**K&L**"), McCarthy, Reynolds, & Penn, LLC fka McCarthy Law Firm, LLC ("**McCarthy Law**"), and Does 1-10 as follows:

## PARTIES

1. Chicora Life is a Utah limited company with its principal place of business located in Layton, Utah.

2. Chicora Holdings is a Utah limited liability company and sole owner of Chicora Life, with its principal place of business in Layton, Utah.

3. K&L is a Delaware limited liability partnership headquartered in Pittsburgh, Pennsylvania. K&L maintains offices in certain states throughout the United States and in international locations. K&L Gates does not have any offices in Utah.

4. McCarthy Law is a South Carolina limited liability company with its principal place of businesss in Columbia, South Carolina.

5. The identities of Does 1-10 are presently unknown to Plaintiffs, but may be discovered through litigation. Plaintiff will timely move to amend its complaint upon discovery of their true names and identities.

## JURISDICTION AND VENUE

6. The court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different States.

7. The court has personal jurisdiction over the defendants pursuant to Utah Code Ann. § 78B-3-205 because each of the defendants transacted business within Utah.

8. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred within this judicial district.

## **GENERAL ALLEGATIONS**

**A. *Fiduciary Duties Between Chicora Life and Chicora Holdings.***

9. Chicora Life is a manager-managed Utah limited liability company which is managed by its sole manager, Douglas M. Durbano.

10. Pursuant to Utah Code § 48-3a-407(3), all matters relating to the activities and affairs of Chicora Life are to be decided exclusively by the manager.

11. A manager of a manager-managed limited liability company owes the members the duties of loyalty and care to account to the limited liability company and to hold as trustee for it any property, profit, or benefit derived by the member:

    a. In the conduct of the limited liability company's activities and affairs; and

    b. From a use by the manager of the limited liability company's property.

**B. *Engagement of K&L.***

12. On May 31, 2016, Chicora Life entered into a contract with K&L for legal representation associated with an adversarial proceeding "in bankruptcy against the County of Charleston over its lease termination at the former Charleston Naval Hospital and to address those additional matters for which the Firm expressly agree[d] to provide representation." *See* Confirmation of Engagement (Revised) (hereinafter "**Engagement Letter**"), p.1 attached as **Ex. 1**.

13. The Engagement Letter stated that K&L was not retained, and expressly disclaimed any obligation, to provide business or investment advice. *Id.* at p.2.

3

14. K&L committed to "endeavor to keep [Chicora Life] apprised of significant development in the course of [K&L's] engagement, to consult with [Chicora Life] about [K&L's] work on an ongoing basis and to obtain [Chicora Life's] direction on critical issues." *Id.*

15. The Engagement Letter incorporated by reference the Terms of Engagement for Legal Services ("**Terms of Engagement**"). *See id.* at p. 1.

16. The Terms of Engagement indicated that K&L's statements for professional services "will be substantially based upon the time spent by professionals, including lawyers, paralegals and other staff members operating under the supervision of lawyers, who perform services on [Chicora Life's] behalf." *See* Terms of Engagement, p. 1, attached as **Ex. 2**.

17. K&L agreed to render statements for professional services and related charges on a monthly basis. *Id.* at p. 2.

18. K&L's services and its lawyer-client relationship with Chicora Life extended through the conclusion of K&L's services and delivery of a final statement for services. *Id.* p. 3.

C. *Engagement of McCarthy Law.*

19. At the recommendation of K&L, Chicora Life engaged the services of McCarthy Law on or about May 6, 2016 to file a petition in bankruptcy and manage the overall bankruptcy proceedings on behalf of Chicora Life, who would be the "debtor-in-possession," as well as other non-bankruptcy matters. *See* Non-Bankrtupcy Retainer Agreement attached as **Ex. 3**; *see also* Bankruptcy Retainer Agreement attached at **Ex. 4**

20. McCarthy Law agreed to, among other things, "provide certain legal representation" including reviewing Chicora Life's financial information, "advise [Chicora Life]

4

as to the best course of action with their creditors and partners and assist it in connection with a non-bankruptcy financial workout with Client's creidtors and partners." *See* Ex. 3.

21.     It was agreed that the foregoing services "may also involve negotiating with [Chicora Life's] creditors in an effort to modify Client's financial obligations to such creditors." *Id.*

22.     McCarthy Law also agreed to "preparing chapter 11 schedules and first day motions, and representing Client at hearings before the Bankruptcy Court." *See* Ex. 4.

### D. Course of Dealings.

23.     Chicora Life engaged K&L to assist in filing a Chapter 11 Bankruptcy Proceeding and pursue an adversarial complaint against Charleston County (the "**County**") after the County breached a lease agreement it entered into with Chicora Life, causing financial ruin to Chicora Life's business.

24.     K&L recommended the services of McCarthy Law to file the petition for bankruptcy and manage the bankruptcy proceedings.

25.     K&L and McCarthy Law worked closely throughout the course of Chicora Life's bankruptcy proceedings.

26.     At the outset of Chicora Life's, K&L's and McCarthy Law's relationship, it was agreed that Chicora Life would utilize the services of Durbano Law Firm ("**Durbano Law**") to perform the majority of legal services for the adversarial proceeding to be initiated against the County.

27.     Initially, while Richard A. Farrier, Jr. of K&L was acting as lead counsel on the matter, the relationship between K&L and Chicora Life was amicable and collaborative.

28. Consistent with the foregoing agreement, Durbano Law drafted several papers to be filed before the United States Bankruptcy Court, District of South Carolina, Adversary Case No. 16-80046 (the "**Adversarial Proceedings**").

29. Following Durbano Law's initial drafting of the papers, K&L would review, add comment and revision, and file the documents with the Court.

30. In this sense, Durbano Law was acting as Chicora Life's primary legal counsel and K&L acted as local counsel for the Adversarial Proceedings.

31. Chicora Life and Durbano Law also instructed McCarthy Law on Chicora Life's preferred course in the Chapter 11 proceedings.

### E. K&L Gates' Deceptive Bill "Padding."

32. Notwithstanding the arrangement between Durbano Law and K&L, K&L's billing records show substantially more time billed for the very documents that Durbano Law initially drafted, with only minimal changes to the papers to show for it. *See* K&L Invoices dated February 2017 through September 2017 (hereinafter "**Invoices**" or singularly "**Invoice**"), attached as **Ex. 5**.

33. An attorney within K&L reported to Chicora that he and other attorneys at the firm are required to attend an annual seminar in Phoenix, Arizona, wherein the attorneys learn about various ways to increase their billing practices.

34. Upon information and belief, K&L engaged in at least the following types deceptive billing practices while performing services for Chicora Life:

   a. "Block billing" is an accounting technique whereby attorneys aggregate multiple smaller tasks into a single "block" entry, for which a single time value is

6

assigned. For instance, on February 2, 2017, "K. B. Taylor" entered a time entry of 2.90 hours with the following description of work performed:

> Research registered agents and/or locations of numerous entities to subpoena and prepare comprehensive list of same (2.6): Draft shell subpoena for documents for merging list with subpoena (.3).

*See* Invoice #3363817. And again on February 3, 2017, K. B. Taylor entered 2.30 hours as follows:

> Email exchange with Global Shared Services and Tracy LaPointe at SC Department of Mental Health regarding corrupt documents (.4); Telephone call from ProLegal regarding flash drives containing documents produced by third parties to pursuant to (*sic*) subpoema dices tecum by Charlston (*sic*) County (x2) (.2); Work on preparing subpoenas duces tecum to numerous third parties (1.7)

*Id.* On February 15, 2017, R. A. Farrier billed 0.50 hours as follows:

> Call with D Cooke and correspond with A Goodstein to set deposition of E. Summey.

*Id.* K&L's Invoices are riddled with block entries for work purportedly performed on behalf of Chicora.

Block billing is often utilized by large law firms to pad the hours actually worked on a matter and drive up amounts billed to clients. According to the California State Bar, block billing causes lawyers to inflate the total hours billed to a client by up to 30 percent. *See* Cal. State Bar Comm. On Mandatory Fee Arbitration, Detecting Attorney Bill Padding, Arbitration Advisory 2003-01 (Jan. 29, 2003).

      b.      "Hoarding" occurs when an overqualified service provider with a high billing rate retains work rather than passing it onto a service provider equally capable of

doing the work, but due to experience level, has a lower billing rate. Often, hoarding results in partners doing associate work, associates doing paralegal work, and/or paralegals doing clerical work. For instance, on February 6, 2017, K.B. Taylor recorded the following time entry for 0.60 hours of work:

> Continue working with Global Shared Business Services regarding conversion of documents produced by SC Department of Mental Health

*Id.* For this, Chicora was charged at a rate of $250.00 per hour; however, the entry seems merely clerical in nature. Another example is documented on February 27, 2017, K. B. Taylor billed 1.50 hours for:

> Begin upload voluminous documents to the extranet produced by third parties in response to subpoenas served by Chicora Life Center.

*Id.* Similarly, on February 21, 2017, J. H. Thiem charged 0.10 hours of work for the clerical work of "Review invoice from S. Harvey (expert). Ms. Theim's rate is $435.00 per hour. The Invoices demonstrate that K&L billed Chicora Life for many hours of clerical work which were not contemplated by the Engagement Agreement.

      c.    "Multi-billing" occurs when multiple attorneys are tasked with performing the same task or to attend the same event when the weight of the work can realistically be handled by only one attorney. Multi-billing is used to charge double the amount of time to a client. For instance, on February 3, 2017, T. C. Sullivan and J. H. Thiem recorded time entries of 1.50 and 1.10 hours, respectively, for a "telephone interview" of "K. David." *Id.* On February 24, 2017, K. B. Taylor entered time for "Review documents and draft timeline in preparation for hearing on Chicora's Motion for Summary Judgment;"

8

however, several other billing entries illustrate that R. A. Farrier, Jr. was handling the motion for summary judgment hearing. *See, e.g., id.*, February 27, 2017 entries.

35. These excessive and deceptive billing practices resulted in K&L billing approximately $1.6 million dollars in legal fees between May 2016 through October 2017 (less than 1.5 years).

### F. Becoming Chicora Life's Creditor/Adversary

36. Notwithstanding K&L's excessive billing practices, the relationship between the parties remained relatively amicable and cooperative while Richard Farrier, Jr. was acting as lead counsel at the firm for the matter.

37. Due to the bankruptcy, K&L and McCarthy Law understood that it was required to apply to the Bankruptcy Court for payment of legal fees. Ultimately, this requirement and the excessive billing practices caused K&L to accrue many hundreds of thousands of dollars' worth of unpaid fees.

38. The relationship between the Chicora Life and K&L began to sour after the untimely death of Mr. Farrier in or about March 2017.

39. Following the passing of Mr. Farrier, it was agreed that Mr. Russel S. Abrams, with whom Chicora Life had no previous relationship, would resume the case as lead counsel at K&L.

40. Following Mr. Abrams' involvement in the proceedings in April 2017, K&L intensified its deceptive billing practices—billing no less than $100,000 in legal fees each month and as much as $354,434.28 in August alone. *See generally,* Ex. 5.

41. The bankruptcy reorganization proceeded as planned and Chicora Life was narrowing in on a summary judgment against the County for its breach. It followed that the Court ordered mediation between the parties.

42. Feeling cornered by the fate of the Adversarial Proceedings pending against it, the County formulated a plan to mitigate the damages that would inevitably be entered against it through summary judgment—a proposal to purchase the building they leased from Chicora Life which they argued should be "crammed down" on Chicora Life to satisfy Chicora Life's obligations to its creditors (the "**Cramdown Plan**").

43. By the time the Cramdown Plan was proposed to the Bankruptcy Court, K&L had accrued over $1 million in legal fees against Chicora Life.

44. Considering the scale of its fees, K&L began to take particular interest in the Cramdown Plan, which (as viewed by K&L) proposed sufficient funds to pay not only Chicora Life's creditors, but the entirety of K&L's outstanding fee balance.

45. In this sense, K&L was Chicora Life's creditor and soon, as it worked out, would become its adversary.

46. The County settlement plan was proposed to the Court. The Court in-turn ordered Chicora Life to review the plan and file any objections within a reasonable time.

47. During Chicora Life's due diligence period, it's manager discovered that a significant capital gains tax liability would be incurred by Chicora Holdings (Chicora Life's sole member) if the Court approved the settlement plan.

48. Chicora Life's tax attorney, Robert Young, Esq., explained that Chicora Life is a "disregarded entity" for tax purposes, which results in the IRS treating it as a division of its

single member LLC owner, Chicora Holdings. Accordingly, the Capital Gains tax which would be triggered by the County's settlement proposal would be reported on the return of Chicora Holdings and then flow to the members of Chicora Holdings.

49.     Durbano Law quickly drafted a motion/objection to the proposed settlement, alerting the Court that there would be insufficient funds to pay Chicora Holdings' tax liability, and Chicora Life requested that K&L and/or McCarthy Reynolds file it with the Court. However, K&L and McCarthy Reynolds refused. *See* Mot. for Order in Aid of Plan Implementation, Authority to Distribute Proceeds of Settlement, and in support of Objections to Claims, attached at **Ex. 6**.

50.     Upon information and belief, Defendants refused to file Chicora Holdings' objection because it had the potential of impeding their ability of receiving payment for outstanding legal fees. In this sense, K&L and McCarthy Law became adversaries to Chicora Life and Chicora Holdings.

51.     Against Chicora Life's direction, K&L and McCarthy Law represented to the Court that the Cramdown Plan was in Chicora Life's best interests, would not result in any tax liability to Chicora Life and should, therefore, be approved by the Court.

52.     As a result of K&L and McCarthy Law's refusal to file the motion, as well as their representation that the Settlement Proceeds would pay off all outstanding claims and taxes owed by Chicora Life, the Court approved the Cramdown Plan.

53.     Shortly after the dust settled from the bankruptcy proceedings, Chicora Holdings affirmed that it would be subject to a tax liability of $3,057,375.00 which it would have to pass

on to its equity holders without any cash proceeds from the Cramdown Plan available to make payment thereon.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

54. Plaintiffs incorporate all preceding paragraphs as though fully restated herein.

55. Chicora Life, K&L and McCarthy Law entered into an agreement for legal services.

56. Through the agreement, K&L expressly disclaimed any obligation to provide business or investment advice.

57. K&L committed to keep Chicora Life apprised of significant development in the course of K&L's engagement, to consult with Chicora Life about K&L's work on an ongoing basis and to obtain Chicora Life's direction on critical issues.

58. McCarthy Law expressly agreed to review Chicora Life's financial information and advice Chicora Life as to the best course of action with their creditors and partners and assist in financial workouts with the same.

59. K&L and McCarthy Law have breached the legal services agreement by, among other things, substituting their financial and business opinions or advice over the managers of Chicora Life and ignoring direct instruction from Chicora Life regarding legal representations made to the bankruptcy court on critical issues.

60. K&L's deceptive billing practices caused it to pad its billing hours for unearned work, thus violating the terms of the legal services agreement.

61. K&L's and McCarthy Law's breaches have resulted in damages to Chicora Life including by causing it to breach its duties to its sole member, Chicora Holdings.

## SECOND CLAIM FOR RELIEF
(Attorney Malpractice and Breach of Fiduciary Duty)

62. Plaintiffs incorporate all preceding paragraphs as though fully restated herein.

63. K&L and McCarthy Law were Chicora Life's attorneys.

64. An attorney-client relationship is, by its very nature, a fiduciary relationship.

65. Under the attorney-client relationship an attorney owes its client a duty to, *inter alia*, (1) proceed in a manner reasonably calculated to advance a client's lawful objectives, as defined by the client after consultation; (2) act with reasonable competence and diligence; (3) comply with obligations concerning the client's confidences and property; (4) avoid impermissible conflicting interests; (5) deal honestly with the client and not employ advantages arising from the client-lawyer relationship in a manner adverse to the client; and (6) fulfill valid contractual obligations to the client.

66. K&L and McCarthy Law were aware that Chicora Life was a limited liability company which owed certain fiduciary duties to its sole member, Chicora Holdings.

67. K&L and McCarthy Law breached fiduciary duties by, among others, (1) making representations to the Court contrary Chicora Life's desire and explicit instruction; (2) failing to act with reasonable competence in representing a limited liability company in accordance with the duties and obligations associated therewith; (3) failing to comply with the obligations concerning Chicora Life's confidences and property; (4) incurring substantial legal fees and desiring immediate payment thereon such that it created a conflict of interest; (5) using its position within the bankruptcy proceedings to promote its interests over Chicora Life's; and (6) failing to fulfill its contractual obligations to Chicora Life.

68. As a result of K&L's and McCarthy Law's breaches, Chicora was caused to breach certain duties it owed to Chicora Holdings.

69. Chicora Life's breaches to Chicora Holdings has resulted in damages to Chicora Life.

70. K&L's and McCarthy Law's breaches have resulted in damages to Chicora Life.

### THIRD CLAIM FOR RELIEF
(Fraudulent Billing)

71. Plaintiffs incorporate all preceding paragraphs as though fully restated herein.

72. K&L and McCarthy Law represented that its billing practice would be fair and reasonable, and that its time entries would align legal services actually rendered on behalf of Chicora Life.

73. K&L's and McCarthy Law's representations to this effect were false because they engaged in several fraudulent billing practices as outlined in this complaint.

74. K&L's and McCarthy Law's false representations were material to Chicora Life because it affected it monetarily.

75. K&L and McCarthy Law were aware of their fraudulent billing practices and actively instructed their attorneys and personnel to engage in deceptive practices to take advantage of Chicora Life and receive undeserved financial gain.

76. Chicora Life paid K&L's and McCarthy Law's invoices in confidence of its attorney-client relationship and unknowing of the false representations therein.

77. As a result of K&L's and McCarthy Law's fraudulent billing practices, Chicora Life has grossly overpaid for legal services and, therefore, been damaged.

## FOURTH CLAIM FOR RELIEF
(Aiding and Abetting a Breach of Fiduciary Duty)

78. Plaintiff's incorporate all preceding paragraphs as though fully restated herein.

79. Chicora Life stood in a fiduciary capacity with Chicora Holdings pursuant to its duties outlined by the Utah Revised Uniform Limited Liability Company Act (the "**LLC Act**").

80. Chicora Life owed Chicora Holdings duties of good faith and loyalty, including the duty to hold as trustee Chicora Holdings' property, profit, and any benefit derived from Chicora Life's activities and affairs; and to refrain from managing the company in a manner adverse to the interests of Chicora Holdings.

81. K&L and McCarthy Law were aware or should have been aware of the duties which Chicora Life owed to Chicora Holdings.

82. K&L and McCarthy Law knowingly aided and abetted Chicora Life's breach of fiduciary duties by, among other things, failing to follow the explicit instruction of Chicora Life; failing to account for the duties of good faith and loyalty owed to Chicora Holdings; making false or misleading statements to the bankruptcy court; and, incurring a substantial tax liability to Chicora Holdings without providing any cash or cash equivalent for Chicora Holdings to satisfy said obligation.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For a judgment in favor Plaintiffs in an amount to be proven at trial;

B. For an award of fees, including attorneys' fees, and costs;

C. For prejudgment interest as prescribed by Utah Code Ann. § 15-1-1;

D. For punitive damages;

  E. For further damages that Plaintiffs may incur from this time forward an in an amount to be proven at trial;

  F. For such other and further relief as the court deems just and equitable.

DATED: September 14, 2020.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

        DURBANO LAW FIRM

         /s/ Douglas M. Durbano
        Douglas M. Durbano
        John E. Keiter
        *Attorneys for Plaintiffs*